IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

      v.                                    :          CRIMINAL NO. 24-337

JONATHAN LIM                      :

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Jonathan Lim, a first-time offender, abused his position as a bank manager by embezzling approximately $214,000 cash from his employer over a 5-month period.  The defendant spent most of the money on gambling.  The defendant acted without self-restraint, and since admitting guilt, has made flimsy excuses and offered unconvincing "explanations" without truly accepting his responsibility for this serious crime.  For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration within the advisory guideline range of 15 to 21 months, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum**.**

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

---

[1]  Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

I.    **BACKGROUND**

On November 20, 2025, the defendant pled guilty to one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of embezzlement of bank funds by a bank employee, in violation of 18 U.S.C. § 656.  During his plea colloquy, the defendant admitted that while he was a bank manager of a Citizens Bank branch in Downingtown, Pennsylvania, he took over responsibility for the regular administration of the ATM at that location.  The defendant was responsible for preparing and signing weekly cash settlement sheets that kept track of the amount of cash in the machine.  In order to fill out the sheets, the defendant accessed the ATM and the cash inside.  Starting in or around August 2019 through November 2019, the defendant took approximately $214,000 cash from the ATM, while causing to be prepared and falsely signed

2

weekly cash settlement sheets that falsely claimed the ATM had an amount of cash inside that was not correct.

The defendant resigned from the branch on November 24, 2019. The ATM and branch were audited on November 26, 2019. The ATM on that date, based on the defendant's previous week's settlement worksheet, should have had a cash balance of $191,590. Auditors discovered that the ATM possessed an actual cash balance of just $13,435, resulting in a shortfall of $178,155. Auditors also discovered that the defendant's cash box (as part of his duties, the defendant also kept a teller cash box) was short by $36,000. Citizens Bank audited all employees of the branch and found their respective cash boxes to contain no discrepancies or shortfalls. The total amount embezzled from the branch by the defendant was approximately $214,000.

## II.      SENTENCING CALCULATION

### A.  Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is a term of imprisonment of 60 years, a term of supervised release of five years, a fine of $2,000,000, and a special assessment of $200.

### B.  Sentencing Guidelines Calculation.

The Probation Office correctly calculated the defendant's advisory guideline range as 15-21 months' imprisonment, based on an offense level calculation of 14 and a Criminal History Category I. The government does not dispute this calculation.

## III.     ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual

sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A. **Consideration of the 3553(a) Factors Regarding Imprisonment**.

The nature and circumstances of the offense and the history and characteristics of the defendant support a guideline sentence. The defendant took advantage of his position to steal large amounts of cash and spent it predominantly on gambling, which alone weighs strongly in favor of a meaningful, within-guideline term of imprisonment. He abused the responsibility given to him by his employer by repeatedly and surreptitiously pilfering the ATM machines

whose funds he was entrusted to maintain and protect, which was a serious, repetitious crime that resulted in a substantial sum of money being lost by his employer.

The defendant's characteristics, particularly his post-plea refusal to take ownership of his crimes, also weigh strongly in favor of a guideline sentence of imprisonment. Throughout the Presentence Investigation Report ("PSR") the defendant provided a number of excuses and minimizations of his conduct that demonstrate he has not yet taken responsibility for his criminal conduct. Two prominent examples are as follows:

1.      According to the defendant, if he had time with his son, "this wouldn't have happened." PSR ¶ 22. The defendant complained that he was not able to have paternal rights because he did not get to the hospital in time to sign the birth certificate. PSR ¶ 50. He lamented that his son did not have his last name, but at no point did the defendant voluntarily acknowledge paternity. PSR ¶ 63. When discussing a protection from abuse order ("PFA") entered against him for six months, the defendant tiptoed around responsibility stating, "[s]he got a text from a number, and although they couldn't prove I did it, the judged granted [the PFA]." PSR ¶ 51. The defendant could have spent his online gambling money to pay for supervised visitation with his son but opted not to. *Id*. Instead, the defendant blamed his embezzlement on something that was fully within his control, i.e., spending time with his son.

2.      The defendant also claimed that, "[i]f my boss was a regular boss and did his job, I don't think this would have happened." PSR ¶ 22. He claimed he was demoted because he complained about his supervisor's inappropriate comments towards him. PSR ¶ 75. The government has not been able to confirm this claim, despite having the defendant's human resources file, which was passed to defense counsel in discovery. Rather, investigative records from Citizens Bank showed the defendant was demoted because he had received five separate

warnings, verbal and written, over the course of 14 months.  PSR ¶ 75.  Again, the defendant concluded that but for his supervisor, he would not have stolen.

The defendant's facially ridiculous excuses are an indication that he has internally minimized or rationalized his criminal behavior, a fact that does not bode well for his post-conviction rehabilitation.  The thefts did not "happen" like a tree falling because of high winds; rather, they were the result of the defendant's repeated, deliberate, and premeditated actions. The defendant regularly spent a large amount of time by himself in the room where the ATM cash was held, and from which he stole cash.  PSR ¶¶ 11, 76.  Each instance of theft required the defendant to take affirmative steps to cover up his actions.  *Id*.  He had to review and fill out weekly settlement sheets, then certify the records.  PSR ¶ 11-16.  Each weekly settlement sheet required him to take stock of his actions, then choose to write a false number and certify it.  *Id*. He took these affirmative steps every week, for approximately 16 weeks.  *Id*.  The crimes to which the defendant pleaded guilty did not just "happen" – he actively embezzled, over the course of approximately 4 months.  The defendant's actions and his subsequent commentary about them show a person who still minimizes, rather than meaningfully taking responsibility. Thus, the nature and circumstances of the offense and the history and characteristics of the defendant counsel in favor of a guideline sentence.

It is clear that the guideline term of imprisonment is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2).  Furthermore, the recommended sentence of incarceration affords adequate deterrence to others who would commit a similar offense.  *Id.*

In addition, adherence to the recommended guideline range assures that the defendant's sentence is consistent with those imposed nationwide on similarly situated offenders, and thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).  While in custody, he will be certain to receive treatment for his various issues, rather than leaving it to him to decide to take action.  The defendant could benefit from vocational training that could enable him to start living a responsible and law-abiding life, setting an example for his son.

Restitution is requested in the amount of $214, 155.  *See* § 3553(a)(7).  As of the date of this submission, the defendant has not filed a sentencing memorandum.

### B.  <u>Supervised Release</u>.

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be.  The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed.  Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception

of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of 5 years is warranted. As explained above, the defendant, at 42 years of age, still minimizes his conduct and only recently came to admit certain conditions that require serious attention, e.g., a gambling addiction. PSR ¶ 64 (according to the PSR, the defendant began gambling counseling on April 7, 2026). Close supervision following release from imprisonment is warranted to aid his reentry to society and to help keep him on track. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B) and assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV.    CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a guideline sentence that

fully accounts for the scope and severity of the defendant's criminal conduct is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney


Alisa Shver
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

       Maranna Meehan, Esq.
       Zachary Parrish, Esq.
       Assistant Community Defenders
       Counsel for Jonathan Lim

Alisa Shver
Assistant United States Attorney

DATED:  April 28, 2026.